IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOHN D. LEE, JR., as Special Administrator )
of the Estate of CALEB LEE, deceased )
                                                                )
     Plaintiff, )
                                                               ) Case No. 19-CV-318-GKF-JFJ
v. )
                                                               )
TURN KEY HEALTH CLINICS, LLC, )
WILLIAM COOPER, D.O., )
JAMES CONSTANZER, APRN, )
HOLLY MARTIN, APRN, )
VIC REGALADO, in his official capacity, )
                                                               )
     Defendants. )

**DEFENDANT TURN KEY HEALTH CLINICS, LLC
AND SHERIFF VIC REGALADO'S MOTION TO QUASH
OR MODIFY PLAINTIFF'S SUBPOENA *DUCES TECUM***

Defendants, Turn Key Health Clinics, LLC ("Turn Key") and Sheriff Vic Regalado, respectfully move this Court to quash or modify Plaintiff's subpoena *duces tecum* issued to non-party Emergency Medical Services Authority ("EMSA"). The subpoena is attached hereto as "Exhibit 1". The subpoena at issue seeks the production of records that are wholly irrelevant to the present dispute. Accordingly, the subpoena should be quashed or modified. In accordance with LCvR 37.1, Defendants conferenced with Plaintiff's counsel on May 26 and 27, 2021 in good faith regarding the matters raised in this motion. The parties have been unable to reach an accord. In consideration of general order 21-19, the conference was held telephonically.

**INTRODUCTION**

Plaintiff John D. Lee brings this §1983 action, alleging that Defendants provided constitutionally inadequate healthcare to Plaintiff's son, Caleb Lee, leading to his sudden death from a perforated duodenal ulcer on September 24, 2017.

Defendant Sheriff Vic Regalado was elected as Sheriff of Tulsa County in April of 2016, and Turn Key Health Clinics, LLC ("Turn Key") became the contracted health care provider at the Tulsa County Jail in December of 2016.

Caleb Lee was booked into the Tulsa County Jail on a charge of first-degree murder on September 8, 2017; during booking, it was learned that Mr. Lee was addicted to opiates and was taking 150 mg of methadone, as well as heroin, every day until the date of his arrest. Mr. Lee was accordingly placed on detox / withdrawal protocol and monitored closely throughout his detention. On September 24th, Mr. Lee began to complain of chest pain and was taken to the jail medical unit; EMSA was alerted and dispatched upon Mr. Lee's medical complaints. Unfortunately, Mr. Lee's condition quickly deteriorated, and he was deeply unconscious at the time of EMSA arrival; Mr. Lee underwent cardiac arrest during transport to OSU medical center. Mr. Lee was declared dead soon after his arrival at the hospital. The medical examiner found that Mr. Lee suffered a perforated duodenal ulcer leading to internal bleeding and his death on September 24, 2017.

Caleb Lee's father, John D. Lee, has brought this §1983 action alleging that Defendants Sheriff Vic Regalado, Turn Key, and certain Turn Key employees provided constitutionally inadequate healthcare to Caleb Lee. Plaintiff has served a subpoena *duces tecum* upon EMSA seeking the following:

> All reports, including but not limited to, prehospital care reports, treatment records, patient complaints, vital sign reports, narrative reports, treatment summaries, refusal of service forms, and any other records generated as a result of an EMSA unit/EMSA employee being called to provide, or assess the need for, emergency medical services, including calls on which service was subsequently refused, at the David L. Moss Criminal Justice Center, located at 300 N. Denver Ave., Tulsa, OK 74103, during and between the years of 2013 and 2017.

Plaintiff's subpoena is overbroad and seeks documents that are outside the scope of permissible discovery pursuant to Fed. R. Civ. P. 26(b)(1). Moreover, Plaintiff's subpoena seeks protected

health information; EMSA has already objected to the subpoena on this basis, and Defendants would join in this objection. (*See* Exhibit 2, Objection of EMSA to Plaintiff's Subpoena *Duces Tecum*). Plaintiff's subpoena should be quashed or modified accordingly.

## ARGUMENT AND AUTHORITY

I. **Turn Key and Sheriff Regalado have standing to move to quash or modify Plaintiff's subpoena because the documents requested involve investigations at the Tulsa County Jail, concerning Tulsa County Jail's employees and inmates.**

A party has standing under Fed.R.Civ.P. 45(d)(3) to challenge a subpoena issued to a nonparty if the party has a personal right or privilege with respect to the documents requested in the subpoena. *Howard v. Segway, Inc.,* 2012 WL 2923230, *2 (N.D. Okla. July 18, 2012). The objecting party has the burden of showing standing. *Id*. But this is not an especially heavy burden, as Courts have held that a wide variety of personal rights will suffice to confer standing. *Id.* (privacy right in personnel file confers standing); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) (privacy right to banking records confers standing).

In *E.E.O.C. v. Unit Drilling Co.*, No. 13-CV-147-TCK-PJC, 2014 WL 130551, at *3 (N.D. Okla. Jan. 13, 2014), this Court held that an organization has standing to object to production of personnel and education records of those it represents. Though not factually identical, this case is instructive on the issue of Defendants' standing in this instance. Plaintiff's subpoena is incredibly broad and encompasses records of approximately 1,800 patients; these patients were both inmates at the Tulsa County Jail, but also employees of the Tulsa County Jail as well. Plaintiff's subpoena seeks the protected patient health information of each of these individuals. These patients were in the custody and care of the Tulsa County Jail and under the medical supervision of Turn Key, or employees of the Tulsa County Jail, at the time of EMSA transport. The 1,800 patients whose medical records have been requested will have no notice or opportunity to object to Plaintiff's

subpoena; standing should be conferred upon Defendants for the purpose of asserting the legitimate privacy rights of their employees, inmates, and patients.

## II. Governing Standards

Pursuant to Fed. R. Civ. P. 45(d)(3), this Court has the power to quash or modify a subpoena. Moreover, "although Rule 45 does not include relevance as a reason for quashing a subpoena, it is well-settled that the scope of discovery under a subpoena is the same as that under Rule 26(b) and Rule 34." *E.E.O.C. v. Unit Drilling Co.*, No. 13-CV-147-TCK-PJC, 2014 WL 130551, at *1–2 (N.D. Okla. Jan. 13, 2014). *See*, *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D.Kan.2003); *Barton v. Tomacek,* 2012 WL 4735927 at *3 (N.D. Okla. Oct. 3, 2012); 9A Wright & Miller, *Federal Practice and Procedure* § 2452 (3d ed.2008). "Thus, the Court must examine the relevancy of a subpoena *duces tecum* under the same standards set forth in Rule 26(b) and applied to Rule 34 requests for production." *P.S. ex rel. Nelson v. The Farm, Inc.*, No. 07-2210-JWL-DJW, 2007 WL 4570872, at *2 (D. Kan. Dec. 27, 2007).

The scope of discovery and Defendant's production obligations are governed by Federal Rule of Civil Procedure 26(b)(1), which provides as follows: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Thus, "Rule 26(b) will not permit unlimited discovery. Rule 26(b)(1) permits discovery only of '[r]elevant information'…." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010).

Evidence is relevant under Federal Rule of Evidence 401, if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Which facts are "of consequence" to a particular cause of action is a matter of substantive law; thus, "[t]he relevance of a particular piece of evidence

depends on the substantive law governing the case." *Stroud v. Liberty Mut. Ins. Co.*, No. 15-CV-363-GKF-PJC, 2016 WL 10043485, at *1 (N.D. Okla. July 20, 2016).

### III. Plaintiff's Subpoena should be modified to limit the period of production from December 2016 to September 2017.

Plaintiff seeks the production of EMSA records from 2013 to the end of 2017: this time period includes irrelevant documents generated prior to the date that Turn Key began providing care at the Tulsa County Jail (December 2016) and subsequent to Plaintiff's own claim (September 24, 2017). Plaintiff's subpoena accordingly seeks irrelevant documents.

Plaintiff alleges that Defendants provided constitutionally deficient care to Caleb Lee from September 8, 2017 to September 24, 2017, and that Defendants had a practice, policy, or custom of providing constitutionally inadequate care. Plaintiff's allegations regarding Defendants' allegedly unconstitutional policies, practices, or customs are undoubtedly broad: Plaintiff has alleged constitutional deficiencies in jail medical care dating back to 2007. However, Turn Key did not become the jail medical care provider until *December of 2016*. EMSA records prior to this time—and any policy, practice, or custom such records might arguably establish—are irrelevant to the issues in this case. The issues in this case are: (1) the care that Turn Key provided to Caleb Lee and (2) Turn Key's policies, practices, and customs within the Tulsa County Jail at the time of Caleb Lee's care. As this Court has previously noted regarding Plaintiff's outdated allegations:

> …during that period [from 2007 to 2015], TCSO contracted with Correctional Health Companies, Inc. and then Armor Correctional Health Services, Inc. for healthcare services—not Turn Key. The court cannot reasonably infer that Regalado was aware of constitutional deficiencies in the care of detainees pursuant to the County's contract with Turn Key based solely on Regalado's knowledge of deficiencies in care provided by completely separate entities.

(Dkt. #40, p. 4). Thus, from this Court's previous holding in this case, medical care provided prior to Turn Key's contract with the jail is not relevant to Plaintiff's deliberate indifference claims

against Sheriff Regalado. This Court has further noted that, "the Complaint includes no allegations that Turn Key continued CHC's or Armor's policies." (Dkt #39, p. 15). Records of EMSA visits prior to Turn Key's period of care at the Tulsa County Jail thus have no relevance to Turn Key's policies, practices, or customs.

Moreover, EMSA visits occurring *after* Caleb Lee's death can have no relevance to Turn Key's knowledge of allegedly deficient policies, practices, or customs at the time of Caleb Lee's death; moreover, such subsequent evidence could shed no light on Turn Key's policies or customs that could be causally related to Mr. Lee's death. *See, Bryson v. City of Oklahoma City*, 627 F.3d 784, 789-790 (10th Cir. 2010) ("although this evidence may show that the City later acted with deliberate indifference to Ms. Gilchrist's subsequent misdeeds, it is irrelevant to the material question before us…"); *see also, Bridges v. Wilson*, 2017 U.S. Dist. LEXIS 233567, *15 (N.D. Okla. Jan. 12, 2017) ("The notation in the autopsy report and the statement by 'Mayes County' were both made after the incident in question, and are irrelevant to the issue of whether an unconstitutional policy, practice, or custom existed at the time of the incident."); *McGill v. Corr. Healthcare Cos.*, 2014 U.S. Dist. LEXIS 151929, *18 (D. Colo., Oct. 24, 2014) ("The other sets of minutes all post-date Mr. McGill's stroke. Whether they can be said to show an unconstitutional policy, practice, or custom of the County is irrelevant, as a policy that post-dates Mr. McGill's stroke cannot be said to have been a direct cause of it.").

Plaintiff's subpoena seeks sensitive protected health information of individuals within the custody and care of Defendants. EMSA has objected to Plaintiff's subpoena on this basis, and Defendants concur with EMSA's objections. *See* Exhibit 2. Defendants would also note that, even if protected health information or redacted health information is ultimately produced, Defendants have a legitimate interest in confining such production to only the relevant time period for this

case. Otherwise, the protected health information of numerous patients would be needlessly released pursuant to Plaintiff's subpoena; the exposure of such confidential information should, if produced at all, be at least limited to those records that are actually relevant to this matter.

Plaintiff's subpoena is overbroad in that it seeks the production of records from time periods that are wholly unrelated to any issue in this case; Plaintiff's subpoena should be quashed or the time period for Plaintiff's request should be substantially curtailed to, at the most, the period from December 2016 to September 24, 2017. Indeed, given the highly sensitive and confidential nature of the requested records, and the fact that the health information of numerous individuals could be released with no notice to the effected individuals, it would be appropriate to further limit the period of production, at this Court's discretion.

### IV. Plaintiff's Subpoena should be quashed because it seeks the production of the protected health information of irrelevant non-parties.

Plaintiff's subpoena seeks the production of any and all EMSA records generated from 2013 to the end of 2017 for any EMSA transport from the Tulsa County Jail. By its very terms, Plaintiff's subpoena is not limited to only inmates at the Tulsa County Jail, but also encompasses EMSA visits concerning Tulsa County Jail staff and, indeed, *any* person at the Tulsa County Jail who happened to need medical transport within the specified time period. Plaintiff's subpoena recklessly seeks the highly sensitive, protected health information of individuals whose treatment could have no relevance whatsoever to his claims. Plaintiff's subpoena should be quashed accordingly pursuant to Fed. R. Civ. P. 45(d)(3).

### CONCLUSION

Plaintiff's subpoena seeks privileged documents that are irrelevant to this case as they are unrelated to Plaintiff or Defendants Turn Key or Sheriff Regalado; Plaintiff's subpoena also seeks

protected health information, including of irrelevant non-parties. Defendants move this Court to quash Plaintiff's subpoena or modify it as follows:

1. The scope of time for requested records should be limited to, at most, December 2016, to September 24, 2017 or further limited at this Court's discretion;

2. Any non-inmate records should be withheld from production;

3. Any individually identifiable, protected health information should be appropriately redacted.

WHEREFORE, Defendants Turn Key and Sheriff Regalado move this Court to quash or modify Plaintiff's subpoena *duces tecum* that has been issued to the EMSA.

Respectfully submitted,

/s/ Jo Lynn Jeter
**Joel L. Wohlgemuth**, OBA #9811
**Jo Lynn Jeter**, OBA #20252
**W. Caleb Jones**, OBA #33541
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 S. Boston Ave.
Tulsa, OK  74103
Telephone: (918) 583-7571
Facsimile: (918) 584-7846

**ATTORNEYS FOR DEFENDANTS,
TURN KEY HEALTH CLINICS, LLC,
WILLIAM COOPER, D.O.
JAMES CONSTANZER, APRN,
HOLLY MARTIN, APRN, AND
SHERIFF VIC REGALADO**

## CERTIFICATE OF SERVICE

      I hereby certify that on May 28th 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

  Daniel E. Smolen
  Robert M. Blakemore

                                            /s/ Jo Lynn Jeter
                                            **Jo Lynn Jeter**