IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN D. LEE, JR., as Special Administrator of the Estate of CALEB LEE, deceased,<br><br>Plaintiff,<br><br>v.<br><br>TURN KEY HEALTH CLINICS, LLC,<br>WILLIAM COOPER, D.O.,<br>JAMES CONSTANZER, APRN,<br>HOLLY MARTIN, APRN,<br>VIC REGALADO, in his official capacity,<br><br>Defendants. | Case No. 19-CV-318-GKF-JFJ |

### DEFENDANTS TURN KEY HEALTH CLINICS, LLC AND SHERIFF VIC REGALADO'S REPLY BRIEF IN SUPPORT OF PARTIAL OBJECTION TO MAGISTRATE JUDGE'S DISCOVERY ORDER

Defendants, Turn Key Health Clinics, LLC ("Turn Key") and Sheriff Vic Regalado ("Regalado"), respectfully submit the following Reply Brief in support of Defendants' Partial Objection to Magistrate Judge's Discovery Order (Dkt. #131) ("Partial Objection").

### INTRODUCTION

Plaintiff's Response in Opposition to Defendants' Partial Objection (Dkt. #135) fails to rebut Defendants' core arguments. Defendants' Motion for Protective Order (Dkt. #95) and Partial Objection demonstrate that, pursuant to this Court's Orders, discovery regarding prior medical care providers at the Tulsa County Jail is irrelevant to the Plaintiff's *Monell* claims against Turn Key and Regalado. Plaintiff's Response largely recites uncontested legal standards and asserts that, because discovery is broad, Defendants' Partial Objection is not meritorious. Defendants do not dispute that discovery under *Monell* is broad; indeed, Defendants have agreed to produce certain documents, incidents, policies, and other information relating back to when Turn Key

1

entered into its contract with Tulsa County and began providing medical care in the Tulsa County Jail. Health care at the jail beyond this time period, however, is irrelevant to Turn Key's policies, practices, or customs, and to Regalado's knowledge of alleged "constitutional deficiencies in the care of detainees pursuant to the County's contract with Turn Key." (Dkt. #40, p. 4).

Plaintiff further argues that this Court's previous Orders in this case are no longer of any consequence (Dkt. #135, p. 10)—a position with which the Magistrate Judge herself strenuously disagreed. (Dkt. #129, p. 4:17-19). Plaintiff's arguments regarding the relevancy of Charity Chumley's testimony are similarly unavailing. The fact that an LPN worked under different medical providers at the Tulsa County Jail does not change the issues in this case. Lastly, the case law upon which Plaintiff relies is either inapplicable or cited to support legal standards that are not in dispute. Accordingly, this Court should overturn the Magistrate Judge's Order and grant Defendants' Motion for Protective Order.

## ARGUMENT AND AUTHORITY

### I. Plaintiff has failed to properly address this Court's prior Orders and their continuing effect in this case.

Defendants' Objection noted that this Court, in dismissing Plaintiff's initial Complaint against Sheriff Regalado, wrote as follows:

> [from 2007 to 2015], TCSO contracted with Correctional Health Companies, Inc. and then Armor Correctional Health Services, Inc. for healthcare services—not Turn Key. The court cannot reasonably infer that Regalado was **aware of constitutional deficiencies in the care of detainees pursuant to the County's contract with Turn Key** based solely on Regalado's knowledge of deficiencies in care provided by completely separate entities.

(Dkt. #40, p. 4). This Order thus clearly states the relevant *Monell* issue as to Regalado: the Sheriff's **awareness of "constitutional deficiencies in the care of detainees pursuant to the County's contract with Turn Key."** (*Id.*).

This Court further noted, in granting Defendant Turn Key's Motion to Dismiss, that "the Complaint includes no allegations that Turn Key continued CHC's or Armor's policies." (Dkt #39, p. 15). This Court went on to find that, "plaintiff fails to state a plausible claim that Turn Key had a policy or custom of continuing the practices of its predecessors." (Dkt. #39, p. 16). Plaintiff then amended his Complaint to include allegations specific to Turn Key's own policies and customs. **Plaintiff did not amend his Complaint to include any allegation that Turn Key has continued CHC's or Armor's policies.** (Dkt. #131-1). Nor could Plaintiff plausibly maintain any such allegations.

Plaintiff's Response simply asserts that this Court's previous Orders (Dkt. #39 and #40) "do not pertain" to his Amended Complaint. (Dkt. #135, p. 10). Even though these previous Orders were rendered regarding Plaintiff's initial Complaint, the Orders are nevertheless relevant to the Amended Complaint and Plaintiff's claims.

As noted above, Order No. 39 held that Plaintiff had failed to plausibly allege that Turn Key continued the practices of its predecessors (Dkt. #39, p. 16), and Plaintiff has made no additional allegations in his First Amended Complaint that would cure this noted deficiency.

Order No. 40 determined that Plaintiff's previous allegations, in particular, Plaintiff's overbroad basis for *Monell* liability—consisting of allegations regarding previous jail healthcare providers (Dkt. 2, ¶¶ 44-64)—were insufficient as a matter of law and irrelevant with respect to the County's knowledge of "constitutional deficiencies in the care of detainees pursuant to the County's contract with Turn Key." (Dkt. #40, p. 4). This is the scope of the *Monell* issue as this Court has defined it, and Plaintiff was only permitted to move forward with his claim *after adding allegations specific to Turn Key*. (*See* Dkt. #47, ¶¶ 67-68, 81-89). This Court's Order No. 40 remains operative and has defined the relevant *Monell* issue in this case: The County's knowledge

3

of "constitutional deficiencies in the care of detainees pursuant to the County's contract with Turn Key." *See United States v. Osage Wind, LLC*, 2021 U.S. Dist. LEXIS 4706, *6, 2021 WL 879051, citing *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034 (10th Cir. 2000) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). The fact that Plaintiff's Amended Complaint pleads allegations regarding the actual issues in this case (the care provided by Turn Key and Regalado's knowledge of Turn Key's care), as defined by this Court, does not render the prior Order irrelevant.

Taken together, this Court's prior Orders dictate that: (1) the Plaintiff's burden is to show that Tulsa County Sheriff's Office was aware of constitutional deficiencies with respect to its contract with Turn Key—not CHC or Armor, and (2) Plaintiff has not alleged that Turn Key continued the policies of CHC and Armor. Accordingly, the policies and practices of previous healthcare providers, and incidents occurring under those providers, are irrelevant to any issue in this case. The Magistrate Judge failed to take account of this Court's previous Orders (specifically, Dkt. #39 and #40), and the Magistrate Judge's Order was contrary to law accordingly.

## II. Plaintiff's Amended Complaint does not plausibly allege that Turn Key continued the policies and practices of CHC or Armor.

Given that the relevant *Monell* issue with respect to Regalado is his awareness of constitutional deficiencies in the care of detainees pursuant to the County's contract with Turn Key, the only way that CHC or Armor's policies would be relevant is if Turn Key had continued these policies. Realizing this, Plaintiff also argues that his Amended Complaint alleges that Turn Key's deficiencies "are similar to those staffing and supervision deficiencies in place under CHC and Armor." (Dkt. #135, p. 10, citing Dkt. #47, ¶¶42-62).

4

However, this Court previously held that, "plaintiff fails to state a plausible claim that Turn Key had a policy or custom of continuing the practices of its predecessors." (Dkt. #39, p. 16). Plaintiff's Amended Complaint includes no additional allegations that Turn Key continued the practices of CHC and Armor. The paragraphs that Plaintiff cites to support his contention that the Amended Complaint alleges such a continuation (Dkt. #47, ¶¶ 42-62) are **identical** to those same paragraphs within Plaintiff's initial Complaint (Dkt. #2, ¶¶42-62). *See* Dkt. # 131-1. This Court's previous holding that Plaintiff had failed to allege that Turn Key had a policy or custom of continuing the practices of its predecessors remains true as to the Amended Complaint.

Plaintiff's Response also notes that Flint Junod, an executive at Turn Key, was previously employed by Armor (Dkt. # 102, p. 9). This allegation was included in Plaintiff's initial Complaint, which was dismissed by this Court, as noted above. (Dkt. #2, ¶ 65). This allegation did not suffice to make Armor's policies relevant then, and it does not suffice now. Similarly, the fact that Turn Key retained Dr. Curtis McElroy as a temporary medical director during the transition from Armor to Turn Key does not make Turn Key answerable for Armor's conduct. Notably, Plaintiff prunes from his exhibit (Dkt. # 102-4) APRN Martin's answer to the question of how long Dr. McElroy was employed by Turn Key: "I know it wasn't very long. Maybe a couple of months." (*See* Exhibit 2, Deposition of APRN Holly Martin pp. 20:11-21-3).

The Plaintiff has still failed to plausibly allege that Turn Key has a practice of continuing the policies of CHC and Armor, and the policies and practices of previous providers are accordingly irrelevant to Turn Key's policies, practices, and procedures and Regalado's knowledge of alleged deficiencies in Turn Key's care.

### III. Testimony of Charity Chumley regarding CHC, Armor, and previous incidents under those companies is not relevant to this case.

Given the above, testimony concerning CHC and Armor is irrelevant to Plaintiff's claims, no matter the avenue through which Plaintiff seeks this discovery. Nevertheless, Plaintiff argues that he should be allowed to depose Nurse Charity Chumley (and, presumably, other witnesses) regarding the policies and practices of CHC and Armor, and various incidents under those providers, because it may allow Plaintiff to plausibly allege that Turn Key continued the practices of CHC and Armor. (Dkt. #135, p. 3-4). However, discovery is not permissible merely because, hypothetically, it could allow a plaintiff to state a further plausible claim. The scope of relevance, and discovery, is determined by the claims that have actually been plausibly stated in the operative pleadings. Fed. R. Civ. P. 26(b); *see also, Aus v. Salt Lake Cty.*, 2018 WL 5808801 (D. Utah Nov. 6, 2018) (denying plaintiff's Motion to Compel in §1983 case on the grounds that the policy plaintiff sought to establish was not related to plausibly alleged claim). To allow discovery on the basis of Plaintiff's argument would be to invite discovery that would be practically unlimited in scope.

Nor is Nurse Chumley's "competency as a nurse" at issue in this case, contrary to Plaintiff's arguments. (Dkt. #135, p.4). Nurse Chumley was not heavily involved in the care of Caleb Lee; she is not a Defendant in this matter, and she appears in just two paragraphs of Plaintiff's Complaint. (Dkt. #47, ¶¶ 32-33). Plaintiff's Complaint is not even critical of the care that Nurse Chumley provided; in fact, Plaintiff's Amended Complaint even relies heavily upon the detailed notes that Chumley charted regarding Caleb Lee's condition. Given the actual facts and claims in this case, it is clear that the care provided by Nurse Chumley in 2011, under a completely separate medical care provider, are wholly irrelevant to this case.

Neither CHC nor Armor provided care to Caleb Lee, and no policy of CHC or Armor, or incident occurring under their care, could possibly shed any light on Regalado's knowledge of alleged deficiencies in the care provided by Turn Key. One need only look at how Plaintiff has conducted Nurse Chumley's deposition thus far to see that any testimony regarding CHC and Armor is irrelevant to this case. Plaintiff devoted much of the deposition to eliciting testimony from Nurse Chumley about documents produced to Plaintiff in a completely separate case that Plaintiff's counsel is maintaining against Armor. (Dkt. #111-3, Deposition of Charity Chumley, pgs. 35-65, Plaintiff's Exhibits 81, 83). Plaintiff spent a further hour questioning Nurse Chumley about the death of Elliott Williams in 2011, including making her watch a 10-minute video of Mr. Williams (which was created by plaintiff's counsel for the Williams trial) and demanding that Chumley perform a pantomime of care she provided to Mr. Williams in 2011. (Dkt. #111-3, pgs. 78:3-80:8). During the 2.5 hours of deposition, Nurse Chumley was never once asked about Caleb Lee.

### IV.     Plaintiff's case law citations do not rebut the arguments in Defendants' Objection to the Magistrate's Order.

Plaintiff's Response argues at length that *Monell* and its attendant standards dictate broad discovery beyond the circumstances of the immediate Plaintiff. Defendants generally agree, and understand the scope of a *Monell* claim and Defendants' attendant discovery obligations. Thus, Defendants have agreed to produce certain documents, information, and incidents dating back to the beginning of Turn Key's tenure at the Tulsa County Jail. Such information is the only discovery that could possibly be relevant to not only Turn Key's policies and practices in the Tulsa County Jail and the County's knowledge of "constitutional deficiencies in the care of detainees pursuant to the County's contract with Turn Key." (Dkt. #40, p. 4). The more expansive breadth of discovery in a civil rights suit does not mean that discovery is unbounded by Rule 26(b) and the specific facts

of a case. *See Aus v. Salt Lake Cty.*, 2018 WL 5808801 (D. Utah Nov. 6, 2018) (denying plaintiff's Motion to Compel on the grounds that the policy plaintiff sought to establish was not causally connected to the death of plaintiff's decedent).

Moreover, "the mere fact that a plaintiff entertains a 'broad theory of the case' does not justify more expansive discovery, unless the discovery is relevant to the plaintiff's actual claims or defenses." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1193 (10th Cir. 2009). Plaintiff cannot simply assert his claims in the broadest possible manner in order to divorce the scope of discovery from the actual relevant facts and issues in this case.

Plaintiff also maintains that Defendants must meet an additional burden because the matter encompassed by Defendants' Motion for Protective Order, "appears relevant." (Dkt. # 102, p. 8, citing *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003)). Defendants do not propose to restrict discovery of matter that "appears relevant"— Defendants simply deny that the discovery at issue "appears relevant" or is relevant at all, especially in light of the issues as they have been framed and pled in this case. Caleb Lee died from an undiagnosed duodenal ulcer, and he had been treated by Turn Key for symptoms of opiate withdrawal. Defendant Turn Key is alleged to have provided unconstitutional medical care. Turn Key's care was rendered pursuant to Turn Key's contract with Tulsa County. Any constitutional inadequacy would necessarily arise from Turn Key's policies and practices within the jail, and any failure of oversight on the part of Tulsa County would necessarily relate to Turn Key's policies, practices, and customs and the County's knowledge of the same.

Plaintiff also cites an inapplicable line of cases related to defendants seeking to "restrict" discovery. (Dkt. #102, p. 2, citing *Hacket v. Lusk*, No. 3:10-CV-00781, 2011 WL 13232151 (S.D. W. Va. May 11, 2011); *King v. Conde*, 121 F.R.D. 180, 197 (E.D.N.Y. 1988)). Other than typical

8

language regarding the breadth of discovery, these cases are largely irrelevant and deal with the discoverability of documents that defendants claim are subject to privacy privileges established by state statute. Thus, in these cases, the documents at issue were admittedly relevant, and defendants sought "restricted discovery" in that they sought to restrict production of admittedly relevant information under a claim of privilege. *See King*, 121 F.R.D. at 187-190. This line of cases is inapposite to Defendant's request for a Protective Order to exclude irrelevant discovery.

## **CONCLUSION**

Defendants have shown that they are entitled to the requested Protective Order and that the Magistrate Judge's Order denying said Protective Order was contrary to law. Defendants are not seeking "restricted discovery" or seeking to avoid producing apparently relevant discovery. This Court has previously held that the policies and actions of the Tulsa County Jail's previous healthcare providers are not relevant to the care that Turn Key provided, Turn Key's policies, practices, and customs, and Tulsa County's awareness of alleged constitutional deficiencies in Turn Key's healthcare delivery system. Defendants merely ask this Court to carry forth these Orders to their logical conclusion and to appropriately delineate the scope of discovery in accordance with the relevant issues in this case.

WHEREFORE, Defendants Turn Key and Sheriff Regalado respectfully request that this Court overturn the Magistrate Judge's Order and grant Defendants' Motion for Protective Order (Dkt. # 95).

Respectfully submitted,

/s/ Jo Lynn Jeter
**Joel L. Wohlgemuth**, OBA #9811
**Jo Lynn Jeter**, OBA #20252
**W. Caleb Jones**, OBA #33541
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 S. Boston Ave.
Tulsa, OK  74103
Telephone: (918) 583-7571
Facsimile: (918) 584-7846

**ATTORNEYS FOR DEFENDANTS,
TURN KEY HEALTH CLINICS, LLC,
WILLIAM COOPER, D.O.
JAMES CONSTANZER, APRN,
HOLLY MARTIN, APRN, AND
SHERIFF VIC REGALADO**

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Daniel E. Smolen
Robert M. Blakemore

/s/ Jo Lynn Jeter
**Jo Lynn Jeter**